**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**Case No.: 7:19-cv-164-D**

GREG BUSCEMI, KYLE KOPITKE and )
WILLIAM CLARK )
                                **Plaintiffs** )
Vs. )
                                                       )
KAREN BRINSON BELL in her official capacity )
as Executive  Director of the North Carolina State )
Board of Elections and Ethics Enforcement, )
                                 **Defendant** )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS**
**MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION**

    **COME NOW** the Plaintiffs by and through counsel and file this memorandum of law in

support of their Motion seeking for Preliminary and Permanent Injunction and state as follows:

**I. REQUIREMENTS FOR PRELIMINARY**
**AND PERMANENT INJUNCTION:**

    In *Winter v. NRDC, Inc.* 555 U.S. 7 (2008) the Supreme Court stated that "[a] plaintiff

seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he

is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

tips in his favor, and that an injunction is in the public interest." 555 U.S. at 20.[1]

---

[1]    The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that for a preliminary injunction the plaintiff must only show a *likelihood of success* on the merits whereas a permanent injunction can only be issued after the plaintiff has achieved *actual success*.

    Plaintiffs contend that Defendant cannot offer *any* facts that would entitle them to a judgment in their favor and that, therefore, the court should enter a permanent injunction.

1

The facts establishing plaintiffs' likelihood of success on the merits are addressed in subsequent sections of this memorandum. The factors establishing the remaining three requirements for injunctive relief are examined below.

### I-A: Avoiding Irreparable Harm:

Plaintiffs' claims all relate to requirements that must be satisfied in order to be able to participate in the 2020 general elections. The right to participate in elections is one of the most fundamental rights in our democracy, and there is no substitute for denial of a person or party its right to participate in an election. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

As the court explained in *Barr v. Galvin*, 584 F. Supp. 2d 316, 321 (D. Mass. 2008), "[n]o damages or other legal remedy can compensate for a missed election."

### I-B: Harm to Others:

Participation in elections by additional Unaffiliated Candidates cannot harm anyone. The relief requested in Counts I-A/B and III will only enable the Plaintiffs Kyle Kopetik and Greg Buscemi to be included on the ballot and will allow all voters to have more choices. The relief requested in Count II will only ensure that Plaintiff William Clark and other voters will be able to vote for the person of their choice. Surely, this relief cannot cause harm to anyone.

### I-C:  The Public Interest::

No one can seriously dispute the proposition that the public interest is served by having a full spectrum of candidate choices and the unrestricted right to vote for the persons of one's choice' The relief requested in this action does nothing but further the public interest by providing voters with choices.  Furthermore, protection of Plaintiffs' constitutional rights serves the interests of the

public. *See League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 248 (4th Cir. 2014) ("[U]pholding constitutional rights serves the public interest.").[2]

## II. STANDARD OF JUDICIAL REVIEW OF ELECTION LAWS:

The *general* standard for evaluating constitutional challenges to state election laws was articulated by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and restated in *Burdick v. Takushi*, 504 U.S. 428 (1992). As initially stated in *Anderson*, the "*Anderson/Burdick*" test imposes the following requirements.[3]

> "[The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the *precise interests*[4] put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the *legitimacy*[5] and strength of each

---

[2]     The early issuance of a ruling on the constitutionality of the challenged provisions of the election code will also be in the public interest because it will alert the General Assembly in time to address statutory infirmities in the upcoming legislative session.

[3]     Bracketed footnotes in the quote from *Anderson* were not in the original but are citations to authorities construing key terms from the *Anderson* standard.

[4]     An *abstract* statement of interest does not satisfy this requirement  See *Saieg v. City of Dearborn*, 641 F.3d 727, 736 (6th Cir. 2011) ("The defendants must do more than assert interests that are important *in the abstract*.") (Emphasis added). As the court stated in *Ohio State Conf. of the NAACP v. Husted*, 768 F.3d 524, 7545 (6th Cir. 2014),

> "Once a court has determined that a law burdens voters, under *Anderson-Burdick* those burdens must be weighed against "the *precise* interests put forward by the State as *justifications* for the *burden* imposed by its rule," taking into consideration "the extent to which those interests make it *necessary* to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789 (emphasis added). Put differently, the state must articulate specific, rather than abstract state interests, and *explain why the particular restriction imposed is actually necessary, meaning it actually addresses, the interest put forth*." *Id.* at 545 (Emphasis added)

[5]     In *Fulani v. Krivanek*, 973 F.2d 1539 (11th Cir. 1992), the Eleventh Circuit made this point very forcefully when, in rejecting Florida's attempt to justify a ballot access schema that required minor party and independent candidates to file nominating petitions and pay a fee to have those petition signatures verified to gain ballot access whereas the candidates of major parties were not required to pay such a fee, the court observed:

of those interests; it also must consider the extent to which those interests make it _necessary_ [6] to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." 460 U.S. at 789. (Emphasis added) [7]

---

"The problem is that the state has plucked these interests from other cases without attempting to explain how they justify the discriminatory classification here at issue." _Id._ at 1542.

Likewise, in _Libertarian Party of Ohio v. Blackwell, supra,_ the Sixth Circuit rejected Ohio's proffered justification for its new party petition requirements on the basis that …

"The State has made no clear argument regarding the precise interests it feels are protected by the regulations at issue in the case, relying instead on generalized and hypothetical interests identified in other cases." 462 F.3d at 593.

As the Supreme Court emphasized in _United States v. Virginia_, 518 U.S. 515, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) when examining Virginia's justification for keeping V.M.I. an all-male institution, "The justification must be genuine, not hypothesized or invented post hoc in response to litigation." 518 U.S. at 533. The court is not required to accept the state's proffered interest "if it appears that the stated interests are not the actual interests served by the restriction." _Edenfield v. Fane_, 507 U.S. 761, 768 (1993)

[6]     Although _Anderson_ does not impose the "least restrictive means" requirement of strict scrutiny, at the conclusion of the opinion the Court stated:

"If the State has open to it a _less drastic_ way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." 460 U.S. at 806 (Emphasis added)

In _Obama for Am. v. Husted,_ 697 F.3d 423 (6th Cir. 2012), the Sixth Circuit specifically emphasized the word "necessary" in its summary statement of the _Anderson-Burdick_ test requirements. There, the court emphasized that the State had failed to produce any _evidence_ that there were any problems with the pre-existing system that would be cured by the challenged statute, See _Id._ at 433, and the new statute was therefore not _necessary_.

[7]     Although _Burdick_ quoted the now famous language from _Anderson,_ and is generally credited with having adopted it, it went on to state:

"Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth _Amendment_ rights. Thus, as we have recognized when those rights are subjected to "_severe_" restrictions, the regulation must be "_narrowly drawn to advance a state interest of compelling importance_." 504 U.S. at 434

4

Although the *Anderson/Burdick* test is commonly characterized as a "balancing" test, in his concurring opinion in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) Justice Scalia characterized the test as a "two-track" test in which the court first analyzes the burden on plaintiffs, independent of any asserted state interest. If this analysis leads the court to conclude that the burden is _severe_, the court must then apply strict scrutiny.[8]

### III: COUNT I-A:

### III-A: The SIGNATURE REQUIREMENT
### Of NCGS §163A-1005(a)(1) is Unconstitutionally
### Burdensome for Candidates for Statewide Office:

### III-A-1: NCGS §163A-1005(a)(1) Imposes
### an Unconstitutional Burden on Unaffiliated
### Candidates for Statewide Office:

---

*See also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451-52 (2008) ("Election regulations that impose a severe burden on associational rights are subject to strict scrutiny, and we uphold them only if they are "narrowly tailored to serve a compelling state interest."); *Norman v. Reed*, 502 U.S. 279, 289 (1992) ("[A]ny severe restriction [on ballot access must] be narrowly drawn to advance a state interest of compelling importance"); *Lerman v. Board of Elections*, 232 F.3d 135, 145 (2nd Cir. 2000) ("When state election laws subject speech, association, or the right to vote to "'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'")

[8]     Justice Scalia's analysis is neither new or novel. In *McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215 (4th Cir. 1995), the court also analyzed the limits of the application of the *Anderson/Burdick* test and explained:

> "When facing any constitutional challenge to a state's election laws, a court must first determine whether protected rights are severely burdened. _If so, strict scrutiny applies_. If not, the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests." *Id.* at 1221. (Emphasis added)

5

The number of petition signatures required of a candidate for statewide office established by NCGS §163A-1005(a)(1) is more than six times the number of petition signatures required of a party seeking recognition under the provisions of NCGS §163A-950(a)(2). In *DeLaney v. Bartlett,* 370 F. Supp. 2d 373 (M.D. N.C. 2004) the court held that it was unconstitutional for the State to require a greater number of petition signatures from a candidate for statewide office than is required to form a new political party. In reaching its conclusion, the Court explained:

> "[I]n 2002, a candidate seeking statewide office as the sole representative of a "political party" would be placed on the ballot after obtaining approximately 32,000 signatures than if he ran without a party affiliation. … Consequently, the statutory scheme discourages a candidate who wishes to be unaffiliated in favor of the formation of a political party, whatever its size or motivation." *Id.* at 276. [9], [10]

Significantly, when *Delaney* was decided, the difference between the petition signature requirement for an Unaffiliated Candidate to be voted on by the voters of the entire state and the signature requirement to qualify a new party was only approximately <u>32,000</u> signatures. Under current law, that difference is in excess of <u>58,000</u> signatures. *Delaney* compels the conclusion that NCGS §163A-1005(a)(1) is excessively burdensome and unconstitutional.[11]

---

[9] When *DeLaney* was decided, NCGS §163-122(a)(1) [now §163A-2005(a)(1)] required Unaffiliated Candidates for statewide offices to file petitions containing the signatures of "two percent (2%) of the total number of ***registered voters*** in the State" and NCGS §169-96(a)(2) [now §163A-950(a)(2)] provided for the formations of a new political party by submitting petitions containing the signatures of "two percent (2%) of the total number of ***voters who voted in the most recent general election for Governor.***"

[10] In response to *Delaney*, the General Assembly amended NCGS §163-122(a)(1) to match the requirements of NCGS §163-96(a)(2), but the 2017 amendments to the two statutes restored the mismatch that *Delaney* held to be unconstitutional.

[11] Defendant may argue that, because it is now relatively easy to form a new party and become its candidate, the candidate-Plaintiffs do not need to be Unaffiliated Candidates. However, the viability of this alternative was rejected in *Storer v. Brown*, 415 U.S. 724 1974), where the Court flatly rejected the notion that an independent could be forced to seek ballot access by establishing a new political party. In reaching this conclusion, the Court said:

Although *Delaney* should be found to be dispositive of the issue[12], the following sections also support the conclusion that NCGS §163A-1005(a)(1) is unconstitutional.

### III-A-2: NCGS §163A-1005(a)(1) Has Been Held to Be Unconstitutionally Burdensome:

In *Greaves v. State Bd. of Elections*, 508 F. Supp. 78 (E.D. N.C. 1980) the court held North Carolina's statute for Unaffiliated Candidate seeking statewide office[13] to be unconstitutional based on the fact that North Carolina's petition signature requirement was far in excess of the requirement of other states [*see Id*. at 81]. The Court emphasized that:

> "North Carolina stands out dramatically among the 50 states in establishing an onerous burden on ballot access; its [] requirement is twice as high as the next highest state's, and … more than six times as high as the number required by the highest fixed-number state." *Id.*[14]

---

"[T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other. A new party organization contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state government by electing its candidates to public office. … For the candidate himself, it [forming a new party as opposed to running as an independent candidate] would mean undertaking the serious responsibilities of qualified party status… such as the conduct of a primary, holding party conventions, and the promulgation of party platforms. But more fundamentally, the candidate, who is by definition an independent and desires to remain one, must now consider himself a party man, surrendering his independent status. Must he necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not."" 415 U.S. at 745-746

[12] Significantly, in *DeLaney*, the court also rejected the contention that North Carolina's Unaffiliated Candidate petition signature requirement was necessary to either "avoid ballot clutter" or force a candidate to show a "modicum of support" — the two most commonly asserted justification for petition signature requirements.

[13] NCGS 163A-1005(a)(1) was codified as NCGS §163-122(a)(1) when *Greaves* was decided.

[14] In *Greaves* the court specifically examined the statutory requirements of other states in reaching its conclusion. After discussing the factors to be considered in determining the constitutionality of the North Carolina statute, the Court said:

Although, as a result of the 2017 amendment to §163-122(a)(1), the formula for determining the petition signature requirement for Unaffiliated Candidates has been changed since *Greaves* was decided[15], the same considerations that led the court to hold the old requirement unconstitutional in *Greaves* exist today.

### III-A-3: States are Obligated to Provide all Candidates With a FEASIBLE Means of Achieving Ballot Inclusion

"[T]he present case is not a close one.

"Of the 50 states, 24 require nominating petitions with a fixed number of signatures for an independent candidate for President to gain a place on the ballot. Of these 24, 22 require 10,000 or fewer signatures, one requires 20,000, and one requires 25,000. Twenty-six states require a fixed percentage, either of registered voters or of the number of votes cast in the last election. Of these 26, 20 require less than 5%, 5 require 5%, and North Carolina requires 10%." 508 F. Supp. at 81

For purposes of this case, it is relevant that, as shown in Plaintiffs' Exhibit ___: of the 50 states, 32 require nominating petitions with a fixed or capped number of signatures for an independent candidate for President to gain a place on the ballot. Of these 32, 30 require 10,000 or fewer signatures, one caps its requirement 15,000, and one requires 25,000. Thirteen states require petition signatures based on a percentage of either the number of registered voters or of the number of votes cast in the last election. Of these 13, eight require less than the 1.5% required by North Carolina. [Of the remaining five states: three have petition signature requirements that have never been used because they have a fee payment alternative that is always used; one bases its petition requirement on a percentage of *independent* voters and one bases its petition requirement on the votes cast for the *winning candidate* for statewide office and are therefore not relevant to an analysis of North Carolina's requirement.]

Judicial consideration of the practices of other states is clearly appropriate in an examination of the constitutionality of a state statute. *See Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579 (6th Cir. 2006) (Holding Ohio's new party petition signature requirement to be unconstitutional in large part based on the fact that, in the preceding 10 years, Ohio had the fewest number of ballot qualified minor parties of the eight most populous states.); *Lee v. Keith*, 463 F.3d 763 (7th Cir. 2006) (holding an Illinois' signature requirement unconstitutional based on the fact that other states with significantly lower signature requirements had not experienced any of the problems that Illinois claimed its requirements were needed to avoid.)

[15]   Under NCGS §163-122(a)(1), statewide candidates had to collect signatures equal in number to **_2_** percent of the number of votes last cast for governor. Under NCGS §163A-1005(a)(1) the requirement is **_1.5_** percent of the number of votes cast for governor.

States must provide all candidates with a *feasible* means of achieving ballot inclusion.[16] In accessing the constitutionality of a challenged statute, it is appropriate to look to historical evidence of the success in achieving ballot inclusion under the provisions of a challenged statute.[17] As the evidence shows, only three presidential candidates have, since 1892, satisfied petition signature requirements in excess of 5,000 – Eugene McCarthy in 1974; John Anderson in 1980 and Ross Perot in 1992. [Winger Exhibit A]

The need for a feasible means for Unaffiliated Candidates can be included on the ballot as candidates for President is further found in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6Th Cir. 2006) where the court said:

> [I]t is important to note that the state's interests in regulating an election cannot trump the national interest in having presidential candidates appear on the ballot in each state. In the context of the presidential election, 'state-imposed restrictions implicate a uniquely important national interest." *Anderson*, 460 U.S. at 794-95, 103 S.Ct. 1564[18]. Strict ballot access requirements imposed by states have an

---

[16]    In *Storer v. Brown*, 415 U.S. 724 (1974) the Supreme Court emphasized that:

"[A]lthough the citizens of a State are free to associate with one of the two major political parties, … *the State **must** also provide **feasible** means for other political parties and other candidates to appear on the general election ballot*." 415 U.S. at 728 (Emphasis added)

[17]    See *Storer v. Brown*, 415 U.S. 724, 742 (1974) ("Past experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not." )

[18]    The full statement from *Anderson* reads:

"[I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation. Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States. Thus in a Presidential election a State's enforcement of more stringent ballot access requirements, including filing deadlines, has an impact beyond its own borders. Similarly, the State has a less important interest in regulating Presidential elections than statewide or local

impact beyond their own borders, placing some limits on a state's prerogative to regulate its elections. Moreover, as opposed to state or local elections, the outcome of a presidential election largely will be determined by voters outside a state's borders, reducing the importance of the state's administrative concerns." 462 F.3d at 594

### III-A-4: North Carolina's "Write-In" Candidate Alternative Does Not Save §163A-1005(a)(1) From a Finding That  it is Unconstitutional:

The courts have repeatedly rejected the argument that write-in candidacy is a constitutionally sufficient alternative to satisfying a petition requirement and appearing on the ballot. See *Anderson v. Celebrezze,* 460 U.S. at 799 n.26 ("We have previously noted that this opportunity [to cast a write-in vote] is not an adequate substitute for having the candidate's name appear on the printed ballot."); *Curry v. Buescher*, 394 Fed. Appx. 438, 448, fn. 13 (10th Cir. 2010) ("The Supreme Court [] has clearly stated that the option of pursuing a write-in candidacy is not an adequate substitute for having the candidate's name appear on the printed ballot.") *Duke v. Cleland*, 954 F.2d 1526, 1536 (11th 1992) ("The Supreme Court [] has recognized that the opportunity to run as a write-in candidate is not an adequate substitute for having one's name

---

elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." 460 U.S. 794-95.

printed on the ballot.")[19, 20]

### III-A-5: "Strict Scrutiny" is the
### Applicable Standard of Review:

Under the NCGS §163A-1005(a)(1) the petition signature requirement for statewide candidates is approximately 71,545[21]. It is inarguable that collecting the number of valid signatures required by NCGS §163A-1003(a)(1) imposes a *severe* burden on statewide candidates.[22]

---

[19]     In *Lubin v. Panish,* 415 U.S. 709 (1974), the Court  characterized as "dubious at best" the intimation that a write-in provision was an acceptable means of ballot access:

> "The realities of the electoral process… strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot….   That disparity would, itself, give rise to constitutional questions…." *Id.* at 719 n. 5.

[20]     In considering the constitutionality of a write-in candidacy as the only alternative to satisfying the petition requirements of NCGS §163A-2005, it is noteworthy that NCGS §§163A-979/980 provides *party* candidates for inclusion on the ballot for primary elections with the *alternatives* of either paying a *filing fee* **or** satisfying a *petition signature* requirement. That is, North Carolina has recognized the sufficiency of a fee option to satisfy any justification it may assert for a petition signature requirement. However, the North Carolina statutes do *not* provide Unaffiliated Candidates with a fee payment option. In this respect, North Carolina's statutory scheme violates principles of Equal Protection by giving one class of candidates – those seeking the nomination of a recognized party – a means of being included on the ballot that is not available to another class of candidates – those seeking ballot access as Unaffiliated Candidates.

[21]     North Carolina's petition signature requirement for statewide office is the highest of any state not having a fee option and almost twice as high as the next highest state (Arizona) which has no filing fee option. [Plaintiffs' Exhibit A]

Eleven states. (Alabama, Arkansas, Colorado, Florida, Hawaii, Nebraska, Nevada, New Mexico, North Dakota, South Dakota and Virginia) have separate statutes fixing the petition requirements for candidates for president that are different than those applicable to other statewide offices. Of these, three, Florida, California and Texas, have higher petition requirements than North Carolina, for Independent presidential candidates than for other statewide offices.

[22]     According to Richard Winger, to satisfy any significant petition signature requirement a candidate must collect from 1.5 to 1.75 times the number of signatures required. Furthermore, according to Winger, to satisfy any significant petition signature requirement a candidate must

As discussed *supra*, a statute that imposes a severe burden on ballot access is subject to strict scrutiny. While the Supreme Court has not set forth a clear test for what constitutes a *severe* burden, in *Storer v. Brown*, 415 U.S. 724 (1974) the court asked "could a reasonably diligent independent candidate be expected to satisfy" the suspect regulation. 415 U.S. at 742. In *Storer v. Brown*, the Court further emphasized that "[p]ast experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not." *Id*. As the Sixth Circuit stated in *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir, 2016), "[t]he hallmark of a severe burden is exclusion *or virtual exclusion* from the ballot."

In *McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215 (4th Cir. 1995) the Fourth Circuit specifically noted that:

> "[] *strict scrutiny* can apply to laws which *"make it difficult, **but not impossible**, for a new political party to obtain a position on the ballot. Greidinger v. Davis*, 988 F.2d 1344, 1352 (4th Cir. 1993)" *Id* at fn. 7 [Emphasis added]

Thus it is evident that because, NCGS §163A-2005(a)(1) imposes a severe burden on Unaffiliated Candidates to be elected by a statewide vote, strict scrutiny is the applicable standard of review.

### III-B: Limiting Ballot Access to Candidates Who Are "QUALIFIED VOTERS" is Unconstitutional as to Candidates for Federal Offices.

---

engage the services of paid signature collectors at a rate of from $2.00 to $3.50 per signature (whether valid of not.) Richard Winger states that when petition signature requirements exceed 10,000 they rarely succeed without using the services of professional organizations. [Winger Report P:5-6] Therefore, even assuming that a candidate could collect 10,000 valid signatures, the cost of satisfying the requirements of NCGS 162A-1005(a)(1) would likely be between $180,000 and approximately $367,000. By any standard, for a candidate running for the office of President and having to meet the petition signature requirements of all states, this financial cost represents a *severe* burden.

By its terms, NCGS §163A-1005(a) only provides a means of ballot access for Unaffiliated Candidates who are "qualified voters." However, it is well established that imposing such a requirement violates the U.S. Constitution when applied to candidates for _federal_ office because it imposed a "qualification" that is not expressly included in the Constitution.[23]

States have no authority to impose any qualifications not found in the U.S. Constitution on candidates for federal office. *See e.g. Cook v. Gralike*, 531 U.S. 510, 527 (2001) (Justice. Kennedy concurring) (States "simply lack[] the power to impose any conditions on the election of Senators and Representatives, save neutral provisions as to the time, place, and manner of elections pursuant to Article I, §4."); *Cartwright v. Barnes*, 304 F.3d 1138, 1142 (11 Cir, 2002) ("States may not impose additional qualifications for election to the House of Representatives beyond those contained in the Qualifications Clause.")

---

[23]    Article II, Section 1 of the United States Constitution provides that:

No person except a natural born citizen, or a citizen of the United States, at the time of the adoption of this Constitution, shall be eligible to the office of President; neither shall any person be eligible to that office who shall not have attained to the age of thirty-five years, and been fourteen years a resident within the United States.

Article 2, Section 2, clause 2. of the United States Constitution provides that:

"No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

Article 2, Section 3, clause 2. of the United States Constitution likewise provides that:

No person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

Pursuant to the above cited sections, a Senator or Representative only has to be a resident of a State "when elected."

The courts have specifically held that any requirement that a candidate be a registered voter as a precondition to being a candidate for federal office is *per se* unconstitutional. Of particular significance, in *Campbell v. Davidson*, 233 F.3d 1229 (10th Cir. 2000), the Tenth Circuit specifically held that a Colorado statute requiring that candidates for the U.S. House of Representatives be registered voters was unconstitutional because it impermissibly imposed a qualifying requirement not found in the Constitution.

Also relevant is the fact that "[a]n undue burden, which essentially removes all realistic chance for a … independent candidate to ever access the general election ballot, cannot be justified by any state interest, regardless of how compelling the interest may be." *Libertarian Party of N.D. v. Jaeger*, 659 F.3d 687, 694 (8th Cir. 2011).(Citations omitted). Because NCGS §163A-1005(a) only allows North Carolina "qualified voters" to be Unaffiliated Candidates, non-residents, such as Plaintiff Kyle Kopetik, can <u>never</u> satisfy its requirements.

**WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a. Finding that in limiting its application to "qualified voters" NCGS §163A-1005 imposes an unconstitutional requirement on non-resident Unaffiliated Candidates for the office of U.S. President

b. Finding that the petition signature requirement of NCGS §163A-1005(a)(1) imposes an unconstitutional burden on Unaffiliated Candidates for the office of U.S. President.

c. Directing Defendant to include KYLE KOPITKE on the ballot for the 2020 general election as a candidate for U.S. President. [24]

---

[24] A court has no authority to re-write the flawed provisions of a statute or statutory schema. See *Virginia v. American Booksellers Association*, 484 U.S. 383, 397 (1988) ("[W]e will not

d.    Awarding Plaintiffs attorney's fees and costs.

### IV: COUNT I-B:

### The SIGNATURE REQUIREMENT
### Of NCGS §163A-1005(a)(2) is Unconstitutionally
### Burdensome for Candidates for U.S. Representative
### For North Carolina District 7:

Plaintiff Greg Buscemi adopts by reference the argument asserted in Section III-a-1 and contends that *DeLaney v. Bartlett* precludes Defendant from imposing a petition signature requirement on him as an Unaffiliated Candidate for U.S. Representative for North Carolina District 7 than are required by NCGS §163A-950(a)(2) to form a new political party.

**WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a.    Finding that the petition signature requirement of NCGS §163A-1005(a)(1) imposes an unconstitutional burden on Unaffiliated Candidates for the office of U.S. Representative for North Carolina District 7.

b.    Directing Defendant to include GREG BUSCEMI on the ballot for the 2020 general election as a candidate for U.S. Representative for North Carolina District 7.

c.    Awarding Plaintiffs attorney's fees and costs.

### V: COUNT II:

---

rewrite a state law to conform it to constitutional requirements.) Structural flaws in a statute can **_only_** be corrected by the legislature, and, until the legislature acts, the court has a duty to fashion relief that frees a plaintiff from the burden imposed by unconstitutional statutes.

The courts have consistently held that where an impediment to ballot access is found to be unconstitutional, the proper relief is to order that the injured party be given access to the ballot either by ordering the state to recognize the party or ordering the state to include a candidate on the ballot. See *Williams v. Rhodes*, 393 U.S. 23 (1968) (ordering Independent Party candidate placed on the ballot after finding the state election law provisions failed to provide a constitutionally proper means of access to the ballot.); *McCarthy v. Briscoe,* 429 U.S. 1317 (1976) (Upholding lower court order placing a plaintiff's name on the ballot as an appropriate remedy where the State has failed to provide constitutionally appropriate means of access to the ballot.)

## V-A: Limiting Write-in Candidacy to Candidates Who Are
## "QUALIFIED VOTERS" is Unconstitutional
## as to Candidates for Federal Offices.

By its terms, NCGS §163A-1006 only provides a means of ballot access for Write-in Candidates who are "qualified voters." However, it is well established that imposing such a requirement violates the U.S. Constitution when applied to candidates for _federal_ office because it imposes a "qualification" that is not expressly included in the Constitution

Plaintiffs incorporate by reference the arguments asserted in section III-B

## V-B: North Carolina's Write-In Candidate Petition
## Signature Requirement is Not Necessary
## For EACH Candidate for an Office:

From a ballot standpoint, the only consequence of having _any number_ of candidates satisfy the requirements to be a write-in candidate for a particular office is that _one_ "write-in candidate" line will appear on the ballot.

Voters can only cast a vote for one candidate for any specific office. Therefore, if _one_ candidate (and candidate) for an office satisfies the requirement for adding a "write-in candidate" line on the ballot, that line can be used to vote for _any_ unlisted candidate for that office. That is, regardless of whether one or 25 candidates qualify as write-in candidates, only one write-in candidate line will be included on the ballot. Therefore, when viewed from the perspective of ballot construction, there is no justification for requiring that _each_ write-in candidate _separately_ satisfy the petition signature requirements of NCGS §163A-1006.

## V-C: North Carolina's Write-in Candidate Statute
## Unconstitutionally Limits Voting Rights:

NCGS §163A-1006 requires every prospective write-in candidate to file a candidate petition and provides that votes cast for candidates who have not satisfied this requirement _will not be counted._

In *Dixon v. Maryland State Administrative Bd. of Election Laws,* 878 F.2d 776 (4ᵗʰ Cir. 1989) the Fourth Circuit considered a challenge to a Maryland statute that provided that any write-in candidate who fails to pay Maryland's required filing fee and become certified will neither be considered an official candidate nor have reported the write-in votes cast for him. In holding Maryland's statute unconstitutional the Court said:

> "[W]e … can conceive of no basis whatsoever for conditioning the reporting of write-in votes either on payment of such a fee *or on certification of candidates*."
> 878 F.2d at 785 (Emphasis added)

Although the statute at issue in *Dixon* was a filing fee requirement and the North Carolina statute is a candidate petition statute, this is a distinction without a difference because both impose a requirement predict to having write-in votes *counted*.

### V-D: Standard of Review:

Cases involving the deprivation of the right to have one's vote counted have "traditionally [] been examined under *strict scrutiny*." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 882, 899 (9ᵗʰ Cir. 2003) (Emphasis added) (Criticizing the District Court's application of the *Anderson/Burdick* test.).

### V-E: Analysis:

As the Supreme Court put it in *Reynolds v. Sims,* 377 U.S. 533, 555 (1964) "[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." "Supporting a political party or candidate of one's choosing is a fundamental right protected under the First Amendment." *Murphy v. Cockrell*, 505 F.3d 446, 453 (6ᵗʰ Cir 2007). Moreover, the right to have one's vote counted enjoys the same constitutional protections as the right to vote in the first place. See *United States v. Mosley*, 238 U.S. 383, 386 (1915) (Stating that it is "unquestionable that the right *to have*

*one's vote counted* is as open to protection by Congress as the right to put a ballot in a box.") (Emphasis added); *United States v. Classic*, 313 U.S. 299, 315 (1941) ("[W]ithin the right [to vote] secured by the Constitution, is the right of qualified voters within a state to cast their ballots *and have them counted*…"). Based on these principles, a voter has a fundamental right to vote for whomever they want, whether the candidate's name is on the ballot or the vote is cast for a write-in candidate who has not satisfied the requirements of NCGS §163A-1006, and to have that vote counted.

Also relevant is the fact that, pursuant to NCGS §163A-1007, a write-in candidate line will only be included on the ballot for those offices for which a candidate has satisfied the petition requirements of NCGS §163A-1006.  This means that voters cannot cast write-in votes for any candidate for a given office unless at least one candidate has satisfied the requirements of §163A-1006. However, in *Dixon v. Maryland, supra*, the Court said:

> "It is apodictic that a vote does not lose its constitutional significance merely because it is cast for a candidate who has little or no chance of winning. Nor do we think it loses this character if cast for a non-existent or fictional person, for surely the right to vote for the candidate of one's choice includes the right to say that no candidate is acceptable." 878 F.2d at 782. [Emphasis added]

**WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a.     Finding that NCGS §163A-1006 imposes an unconstitutional requirement on write-in candidates and unconstitutionally interferes with the right of voters who cast a write-in vote for candidates who have not satisfied the requirement of NCGS §163A-1006 to have their votes counted.

b.     Finding that NCGS §163A-1007 unconstitutionally limits the rights of voters.

c.     Directing that North Carolina include a "write-in candidate" line for each office on the ballot.

d.    Enjoining Defendant from refusing to count write-in votes for candidates who have failed to satisfy the requirements of NCGS §163A-1006.

e.    Awarding Plaintiffs attorney's fees and costs.

## VI: COUNT III:

### The FILING DEADLINE Requirements For Unaffiliated Candidates are Unconstitutionally Burdensome:

Filing deadlines applicable to NCGS §163A-979 (relating to candidate filing fees) and NCGS §163A-980 (relating to the filing of petitions in lieu of the payment of fees) operate by reference to the date of the primary election. Prior to the amendments in 2018, the North Carolina primary was held in May. Under the amended statute, North Carolina primary elections occur held "[o]n Tuesday next after the first Monday in March preceding each general election to be held in November…" NCES §163A-700(b). Therefore the date for all filings whose due date was is established by reference to the date of the primary elections is now two months earlier than it was under prior law. For all the reasons discussed below, Plaintiffs contend that the filing deadlines applicable to NCGS §163A-979 and §163A-980 are unconstitutional *when applied to Unaffiliated Candidates.*

NCGS §§163A-1005(a)(1)-(2) (2018) provides that Unaffiliated Candidates signature petitions "must be filed with the State Board of Elections on or before 12:00 noon on the day of the primary election." As noted above, primary elections are now held on Tuesday next after the first Monday in March preceding each general election to be held in November.

Under the pre-2018 statute, NCGS §163-122, Independent Candidates had to file their petitions with the NCSBE had until mid-May to file their petitions with county election officials. That is, the 2018 amendments accelerated the Independent Candidate petition filing date by two months. The new filing deadline is unconstitutional for three reasons:

19

**FIRST:** In *Greaves v. State Bd. of Elections*, 508 F. Supp. 78 (E.D. N.C. 1980) the court considered (and held unconstitutional) the Independent Candidate petition filing deadline. Under the law as it existed at that time, NCGS §163-122[25] required that Unaffiliated Candidate petitions had to be submitted to the Board by the last Friday in April before the general election. In holding the statute unconstitutional, the Court particularly analyzed challenged statute by comparing its requirements to those relating to the designation of the candidates of newly recognized parties.

When *Greaves* was decided, to qualify as a recognized party, a *new* party was required to file its signature petitions with the State Board of Elections "before 12:00 noon on the first day of June preceding the day on which is to be held the first general State election in which the new political party desires to participate." NCGS §163-96(a)(2)[26]. The candidates of newly recognized parties are nominated by conventions and had to be certified to the State Board of Elections "not later than the first day of July prior to the general election." NCGS §163-98. In *Greaves,* the court said:

> "North Carolina grossly discriminates against those who choose to pursue their candidacies as independents rather than by forming a new political party." 508 F. Supp. at 82.[27]

The court went on to explain:

> "The state's interest in ensuring the integrity of the ballot is presumably fully served by requiring new parties to choose their candidates by July 1; no reason for imposing substantially more burdensome requirements on independent candidates has been presented." 508 F. Supp. at 83.

---

[25]    Statutory references in the discussion of cases decided before the 2018 revision of the North Carolina Election Code are to the statute numbers in effect at the applicable time and referenced in the cited opinions.

[26]    The filing date for new parties is *still* the first day of June. NCGS §163A-950(a)(2)

[27]    When *Greaves* was decided, the petition signature requirements to gain party recognition was 10,000.

Prior to the enactment of NCGS §163A-2005, the filing deadline for Unaffiliated Candidates was also established by reference to the date of the primary election. However, before the 2018 amendment, the North Carolina primary election was held in _May_. [NCGS §163-1(b)] This deadline proved sufficient to satisfy all legitimate State interests. However, when the date of the primary election was changed to _March_ [NCGS §163A-700] the reference date (e.g., the date of the primary election) for the filing of Unaffiliated Candidate petitions remained unchanged. Thus, the 2018 amendment reduces the petition signature collection time by two months and thereby imposes an increased burden on candidates without serving any legitimate State interest.[28] The _Anderson/Burdick_ test specifically requires a State to show the _necessity_ for a challenged statute. That is, while the state does not have to use the least restrictive means to achieve its statutory purpose, in analyzing the necessity for a statute that court should consider the availability of alternative means of achieving its objectives. In _Anderson_ the court said:

> "If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." 460 U.S. at 806

**SECOND:** Unaffiliated candidates are generally candidates who are dissatisfied with the

---

[28]    The adequacy of a prior law or practice is relevant to consideration of the necessity for a challenged statute. The fact that a state's prior system did not present any problems was specifically held to be significant in _Constitution Party of New Mexico v. Duran_, 1:12-cv-00325 (D. N.M. December 9, 2013) where the court determined that New Mexico's fling deadline for new parties to gain ballot access was unconstitutional because the state had previously had a July deadline and had not encountered any problems. Specifically, the Court said:

> "the fact that Defendant does not present any evidence that the previous July deadline caused problems in the orderly conduct of elections supports a conclusion that the purpose of the April deadline is to discriminate against minor parties." _Id._ at 16.

21

Case 7:19-cv-00164-D   Document 15   Filed 09/10/19   Page 21 of 26

Prior to the enactment of NCGS §163A-2005, the filing deadline for Unaffiliated Candidates was also established by reference to the date of the primary election. However, before the 2018 amendment, the North Carolina primary election was held in _May_. [NCGS §163-1(b)] This deadline proved sufficient to satisfy all legitimate State interests. However, when the date of the primary election was changed to _March_ [NCGS §163A-700] the reference date (e.g., the date of the primary election) for the filing of Unaffiliated Candidate petitions remained unchanged. Thus, the 2018 amendment reduces the petition signature collection time by two months and thereby imposes an increased burden on candidates without serving any legitimate State interest.[28] The _Anderson/Burdick_ test specifically requires a State to show the _necessity_ for a challenged statute. That is, while the state does not have to use the least restrictive means to achieve its statutory purpose, in analyzing the necessity for a statute that court should consider the availability of alternative means of achieving its objectives. In _Anderson_ the court said:

> "If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." 460 U.S. at 806

**SECOND:** Unaffiliated candidates are generally candidates who are dissatisfied with the

---

[28]    The adequacy of a prior law or practice is relevant to consideration of the necessity for a challenged statute. The fact that a state's prior system did not present any problems was specifically held to be significant in _Constitution Party of New Mexico v. Duran_, 1:12-cv-00325 (D. N.M. December 9, 2013) where the court determined that New Mexico's fling deadline for new parties to gain ballot access was unconstitutional because the state had previously had a July deadline and had not encountered any problems. Specifically, the Court said:

> "the fact that Defendant does not present any evidence that the previous July deadline caused problems in the orderly conduct of elections supports a conclusion that the purpose of the April deadline is to discriminate against minor parties." _Id._ at 16.

21

candidates of a recognized party and typically do not make the decision to seek office until after the candidates of recognized parties have declared their intentions by filing their notices of candidacy, or even after the candidates of recognized parties have chosen their candidates through their primary elections.[29] Therefore, requiring Unaffiliated Candidates to file their signature petitions before the primary election is over deprives them of information that is vital to their decision to become a candidate.

**THIRD**:  Prior to the 2018 amendments, NCGS §163-122(a) required that Unaffiliated Candidate petitions be filed by "the last Friday in June."[30]  This filing date had been in effect for decades, and there is no evidence that there was any problem with it or any need to move the Unaffiliated Candidate filing date up by almost four months. In the absence of any justification for accelerating the filing date for Unaffiliated Candidates, the new filing date must be found to be unconstitutional.

In *Cromer v. South Carolina*, 917 F.2d 819 (4th Cir. 1990) the Court addressed an analogous issue in which South Carolina amended its independent candidate petition filing statute deadline (August 1) to require independent candidates to file a "statement of candidacy" – which was not

---

[29]     The reason why early filing deadlines for independent are unconstitutionally burdensome was explained in *Anderson v. Celebreze* where the Supreme Court said:

> "An early filing deadline may have a substantial impact on independent-minded voters. In election campaigns … the candidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; domestic and international developments bring new issues to center stage and may affect voters' assessments of national problems. Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for new candidacies." 460 U.S. at 790-91

[30]     As a practical matter, petitions had to be submitted to county election officials for verification at least 15 days before they must be submitted to the State Board of Elections because county election officials are given that long to verify petition signatures. See NCGS §163-122(a)(1).

previously required of independent candidates -- by March 30. In affirming the district court's ruling that the new stature was unconstitutional, the Fourth Circuit said:

> "[A]s between new (third) party candidacies and independent candidacies, independent candidacies must be accorded even more protection than third-party candidacies. This flows from the states' heightened interest in regulating the formation of new parties having the potential not possessed by independent candidacies for long-term party control of state government, in combination with the peculiar potential that independent candidacies have for responding to issues *that only emerge during or after the party primary process*." 917 F.2d at 183 (Emphasis added) (Citations omitted)

Later in its decision the Court expanded on this reasoning when it said of the March 30 filing requirement:

> "In practical terms this means that as of March 30, the emergence of independent candidacies to respond to newly emerging issues, or to major party or candidate shifts in position … *are effectively precluded*." *Id.* (Emphasis added)

NCGS §163A-1005(a) suffers from the same defect as the South Carolina statute because it requires Unaffiliated Candidates to undertake the task of satisfying the petition signature requirements of the stature long before the primary elections and before they can even know who the prospective candidates of the major parties are.

In *Pisano v. Strach*, 743 F.3d 927 (4th Cir. 2014) the Court considered the constitutionality of North Carolina's party qualifying petition filing deadline and said:

> "When deciding whether a state's filing deadline is unconstitutionally burdensome, we evaluate the combined effect of the state's ballot-access regulations. See *Wood v. Meadows*, 207 F.3d 708, 711 (4th Cir. 2000) ("When determining whether a given state's filing deadline unconstitutionally burdens candidates' and voters' rights, a court must examine that state's ballot access scheme in its entirety.")." 743 F.3d at 933.

It is particularly relevant that in *Pisano*, in which the court upheld the constitutionality of the June filing deadline for new parties, the court placed great emphasis on the fact that the deadline came *after* the date of the State's primary election. If this fact was relevant to the assessment of

the constitutionality of a *party* qualifying petition deadline, it is doubly relevant to an assessment of a *candidate* petition filing deadline.

There is no evidence that there was any problem with the pre-amendment filing deadline established by NCGS §163-122(a) – i.e. the last Friday in June. Therefore, there is no justification for moving the filing date up almost four months.

**FOURTH**: NCGS §163A-1253 provides that:

> "No later than **90 days** preceding the North Carolina presidential preference primary, the chair of each political party shall submit to the State Board a list of its presidential candidates to be placed on the presidential preference primary ballot." [Emphasis added]

Moreover, NCGS §163A-1254 provides that individual Presidential candidates seeking inclusion on the primary ballot as candidates must submit their signature petitions "no later than 5:00 P.M. on the Monday prior to the date the State Board is required to meet as directed by G.S. 163A-1253." This date is 90 days prior to the presidential primary. However, NCGS §163A-1005(a) establishes a petition filing date for Unaffiliated Candidates for president more than **eight months** before the election in which they seek to participate. There is no reason or rational justification for this discrepancy in the requirements imposed on party candidates and Unaffiliated Candidates.

**FIFTH:** No published identified opinion has ever upheld the constitutionality of an Independent candidate petition filing date earlier than May.[31]

---

[31]    See e.g. *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (Striking March deadline for filing statement of candidacy and nominating petition by independent candidates.); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997) (Holding New Jersey's April filing deadline unconstitutional.); *New Alliance Party of Ala. v. Hand*, 933 F.2d 1568 (11th Cir. 1991) (Holding Alabama's April filing deadline unconstitutional.); *Libertarian Party of Nevada v. Swackhamer,* 638 F.Supp. 565 (D. Nev. 1986) (Holding Nevada's April filing deadline unconstitutional.); *Staddard v. Quinn*, 593 F.Supp. 300 (D. Me. 1984) (Holding Maine's April

**WHEREFORE**, Plaintiffs ask that the court enter its judgment:

a.   Finding that petition filing deadline established by NCGS §163A-1005 imposes an unconstitutional requirement on Unaffiliated Candidates.

b.   Finding that the <u>combination</u> of the petition signature requirements and filing deadlines established by NCGS §163A-1005(a)(1)-(2) impose an unconstitutional burden on plaintiff-candidates.[32]

c.   Directing Defendant to include KYLE KOPITKE on the ballot for the 2020 general election as a candidate for U.S. President.

d.   Directing Defendant to include GREG BUSCEMI on the ballot for the 2020 general election as a candidate for U.S. Representative for North Carolina District 7.

e.   Awarding Plaintiffs attorney's fees and costs.

> */s/ Gregory A. Buscemi*
> GREGORY A. BUSCEMI
> N.C. State Bar No.: 52054
> Attorney for Plaintiffs
> BUSCEMI LAW, PLLC
> 530 Causeway Dr., Ste. F-1
> Wrightsville Beach, NC 28480
> T: (910) 477-3742
> F: (910) 208-0373
> E: gbuscemi@wilmlaw.com

---

filing deadline unconstitutional.); *Lendall v Bryant*, 387 F. Supp. 397 (E.D. Ark. 1974) (Holding Arkansas's April filing deadline unconstitutional.); *McCarthy v Kirkpatrick*, 420 F. Supp 366 (W.D. Mo. 1966) (Holding Missouri's April filing deadline unconstitutional.).

[32]   It is now well established that the constitutionality of state election laws must be determined by examining all related statutes both *<u>individually and collectively.</u>*  As Justice O'Conner explained in her concurring opinion in *Clingman v. Beaver,* 544 U.S. 581 (2005):

> "A court should 'examine the *cumulative* burdens imposed by the *overall* scheme of electoral regulations upon the rights of voters and parties to associate through primary elections.... A panoply of regulations, each apparently defensible when considered alone, may nevertheless have the combined effect of severely restricting participation and competition." *Id.* at 607

___/s/s/_Alan P. Woodruff___
Alan P. Woodruff, Esq.
Counsel for Plaintiffs
3394 Laurel Lane S.E.
Southport, North Carolina 28461
(910) 854-0329
alan.jd.llm@gmail.com

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT/PAGE LIMITS

**I HEREBY CERTIFY** the foregoing includes 8,377 words and complies with the word-count/page limit imposed by Local Rule 7.03(f).

*/s/ Alan P. Woodruff*
ALAN P. WOODRUFF

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and exact copy of the foregoing was served on all counsel of record and interested parties via the Court's CM/ECF e-mail notification system on the 10th day of September, 2019.

*/s/ Alan P. Woodruff*
ALAN P. WOODRUFF