IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-164-BO

| | |
|---|---|
| GREGORY BUSCEMI, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KAREN BRINSON BELL, in her ) <br> capacity as Executive Director of the ) <br> North Carolina State Board of ) <br> Elections, ) <br> ) <br> Defendant. ) | ORDER |

This cause comes before the Court on defendant's motion to dismiss [DE 24] and plaintiffs' motions for preliminary injunction [DE 12], to expedite ruling [DE 29], to file surreply [DE 31], and for a hearing [DE 34]. For the reasons stated below, defendant's motion to dismiss [DE 24] is GRANTED. Plaintiffs' motion for preliminary injunction [DE 12] is DENIED. Plaintiffs' motions for a hearing, to file surreply, and to expedite rulings [DE 29, 31, 34] are DENIED AS MOOT.

BACKGROUND

Plaintiffs are three individuals challenging North Carolina's laws governing ballot access for unaffiliated and write-in candidates. Plaintiff Kyle Kopitke is a Michigan resident seeking placement on the 2020 general election ballot as an unaffiliated candidate for President of the United States. Plaintiff Gregory Buscemi is a North Carolina resident seeking placement on the 2020 general election ballot as an unaffiliated candidate for U.S. Representative for North

Carolina's Seventh Congressional District. William Clark is a North Carolina resident and registered voter who wishes to cast write-in votes for all offices.

In North Carolina, to have one's name printed on the general election ballot, an unaffiliated candidate for statewide office must file a written petition with the State Board of Elections. N.C. Gen. Stat. § 163-122. This petition must be signed by qualified voters in the state equal in number to 1.5% of the total number of voters who voted in the most recent general election for Governor. *Id.* Consequently, for his name to appear on the November 2020 ballot, Mr. Kopitke must submit a petition with 71,545 signatures.

An unaffiliated candidate for a district office must file a petition containing signatures of qualified voters of the district equal in number to 1.5% of the total number of registered voters in the district as of January 1 of the election year. *Id.* The exact total is not yet known, but defendant estimates Mr. Buscemi would be required to collect about 8,276 signatures to qualify for the 2020 ballot.

These petitions must be submitted by the date of the primary election, which for this cycle is March 3, 2020.

Candidates may also seek election via write-in. Aspirants seeking to qualify as a write-in candidate—so that the votes cast for them will actually be counted—must file a declaration of intent and a petition. § 163-123. These petitions must be submitted 90 days before the general election and must include 500 and 250 signatures for statewide office and district office, respectively. *Id.*

On August 30, 2019, plaintiffs filed this lawsuit challenging the ballot access laws described above. DE 1. Specifically, plaintiffs claim that: (1) North Carolina's signature requirement for unaffiliated candidates for statewide office imposes an unconstitutional burden

on Mr. Kopitke; (2) North Carolina's signature requirement for unaffiliated candidates for district office imposes an unconstitutional burden on Mr. Buscemi; (3) the March filing deadline is unconstitutional; and (4) North Carolina's laws governing write-in candidates unconstitutionally prevent Mr. Clark from casting write-in votes. *See* DE 1; DE 27 at 9–10.

On September 10, 2019, plaintiffs moved for preliminary and permanent injunctions, asking the Court to prevent defendant from enforcing the above requirements against them and requesting that the Court order defendant to include Mr. Koptike and Mr. Buscemi on the ballot for the 2020 general election. DE 12. Defendant moved to dismiss the suit. DE 24. Plaintiffs then moved for an expedited ruling from this Court and for a hearing. The Court held oral argument at Elizabeth City, North Carolina on November 8, 2019.

## DISCUSSION

Plaintiffs move for a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), alleging plaintiffs do not have standing, and for failure to state a claim under Rule 12(b)(6). Article III standing requires an injury-in-fact that is traceable to the defendant's conduct and redressable by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). To survive a motion under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

3

Case 7:19-cv-00164-BO   Document 42   Filed 11/22/19   Page 3 of 10

I. <u>Standing</u>

Defendant moves to dismiss for lack of standing. Defendant argues that Mr. Kopitke and Mr. Buscemi lack standing to seek mandatory injunctive relief because the Court cannot order them on the ballot and plaintiffs have not demonstrated that they could meet even a lower signature requirement.[1] Defendant argues Mr. Clark lacks standing because his injury is limited to a desire to cast write-in candidates for all offices. Because Mr. Clark has not identified specific write-in candidates, defendant calls Mr. Clark's injury speculative.

The Court finds that plaintiffs have standing to pursue their claims. Mr. Kopitke's and Mr. Buscemi's injuries are concrete, actual, traceable to defendant, and could be remedied by a decision from this Court. Simply stated, defendant administers and enforces signature requirements and deadlines that impede plaintiffs stated ends of having their names printed on North Carolina's 2020 general election ballot. Courts have remedied these types of injuries in a number of ways, including lowering signature requirements. With respect to Mr. Clark, defendant administers a law that deprives him of his asserted right to cast write-in votes for whomever he wants—and to have those votes counted. Defendant's argument that Mr. Clark must identify specific candidates misses the point. Mr. Clark wants the freedom to walk into a voting booth in November 2020 and cast a write-in vote for whomever he chooses at that moment, regardless of whether that individual has declared themselves a candidate, and to have that vote counted. Mr. Clark's injury is that defendant will not count his "protest votes." This is an injury-in-fact sufficient for standing.

---

[1] Defendant includes an additional standing argument about plaintiffs' inability to challenge fee-related requirements. Plaintiffs clarified that they are not challenging this requirement. Accordingly, this standing argument need not be addressed.

4

II. Claims for Relief and Likelihood of Success on the Merits

The Constitution empowers states to prescribe the "times, places, and manner" of their own elections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citing Art. I, § 4, cl. 1). "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Id.* While the Constitution establishes the qualifications for the offices at issue here—President and U.S. Representative—state requirements for printing names on the ballot are a distinct concept. It is quite obvious that a state with no requirements for printing names on its ballot—a state that prints the names of all aspirants—runs the risk of an unwieldy ballot, leading to voter confusion and election disorder.

But it is also true that "ballot-access restrictions implicate substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932 (4th Cir. 2014) (internal quotations omitted). As such, courts must weigh the impact of a ballot regulation on the aspirant's constitutional rights against the state's interests in regulating its elections. *See Burdick*, 504 U.S. at 434 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). When performing this inquiry, courts evaluate "the combined effect of the state's ballot-access regulations." *Pisano*, 743 F.3d at 933.

*"Qualified Voter"*

To start, plaintiffs challenge § 163-122 and § 163-123 as applied to Mr. Kopitke because these two provisions seem to restrict ballot access to "qualified voters." Section 163-122 states: "any qualified voter who seeks to have the voter's name printed on the general ballot as an unaffiliated candidate shall [comply with the petition and signature requirements]." Section 163-123 states: "[a]ny qualified voter who seeks to have write-in votes for him counted in a general

5

Case 7:19-cv-00164-BO   Document 42   Filed 11/22/19   Page 5 of 10

election shall file a declaration of intent . . .." Plaintiffs contend that the phrase "qualified voter" excludes non-residents, like Mr. Kopitke, and therefore, renders § 163-122 and § 163-123 unconstitutional as applied to him.

Were this the case, plaintiffs would be correct. However, defendant clarifies that § 163-122 and § 163-123 are not limited to in-state residents with respect to candidates for President. Defendant represents that "qualified voter" does not mean "registered voter" and that the phrase "qualified voter" would not restrict Mr. Kopitke's petition from being considered. While defendant does not define "qualified voter," the Court is assured that the phrase would not preclude Mr. Kopitke from submitting an otherwise compliant unaffiliated candidate or write-in petition. Accordingly, the Court rejects plaintiffs' claim with respect to the phrase "qualified voter."

*Petition Requirements for Unaffiliated Candidates—Statewide Office*

For statewide office, North Carolina requires unaffiliated candidates to submit petitions containing signatures amounting to 1.5% of the total number of votes cast in the previous Governor's race, or 71,545 signatures. These petitions must be filed by March 3, 2020. Plaintiffs contend that the number of signatures required (71,545) and the March deadline are unconstitutionally burdensome. Plaintiffs support their argument by contrasting the signature requirement for unaffiliated candidates with the signature requirement for new political parties and comparing the March deadline to the former May deadline, which changed when North Carolina changed the date of its primary elections.

This case is easily analogized to the Fourth Circuit's decision in *Pisano v. Strach*, 743 F.3d 927 (4th Cir. 2014). There, the court considered the constitutionality of North Carolina's requirements for new political parties to achieve recognition under the election laws and thus

nominate candidates for office. At the time, a new political party seeking recognition was required to submit a petition signed by registered and qualified voters equal in number to 2% of the total number of voters who voted in the most recent general election for Governor, which amounted to 85,379 signatures. *Id.* at 930. The submission deadline for the signatures was May 17. *Id.* Plaintiffs alleged that the May 17 deadline, in conjunction with the signature requirement, created an impermissible barrier to ballot access in violation of their First and Fourteenth Amendment rights.

The court rejected plaintiffs' challenge outright, going as far as saying that plaintiffs had "not shown that North Carolina's scheme burdens them in any meaningful way." *Id.* at 935. The court noted that plaintiffs had three and a half years to collect the required signatures and characterized the plaintiffs' burden as "modest." *Id.* at 936.

The Court sees little difference between the combined effect of the requirements upheld in *Pisano* and the one at issue here. Mr. Koptike has about the same amount of time to collect 14,000 fewer signatures. With *Pisano* as a marker, the Court concludes Mr. Kopitke's burden is modest. *See id.* at 934–36. Accordingly, defendant's asserted regulatory interests in minimizing voter confusion and focusing voter attention on the general election after conclusion of the primary are sufficiently weighty to justify the requirements. *See* DE 25 at 21–22 (citing *Burdick*, 504 U.S. at 439).

Plaintiffs point to the lower signature requirement for new party recognition—which now stands at .25%—and attempt to draw a direct comparison with unaffiliated candidates, arguing the disparity between the signature requirements is unconstitutional. DE 15 at 6; DE 27 at 14. This comparison fails. Courts have repeatedly sanctioned different requirements for party-affiliated and unaffiliated candidates to achieve ballot access. *See, e.g., Jenness v. Fortson*, 403

7

U.S. 431, 441 (1971); *Greene v. Bartlett*, 449 F. App'x 312, 314 (4th Cir. 2011). The groups are simply not similarly situated. An unaffiliated candidate is an individual seeking ballot access for himself whereas the new party is a group of individuals seeking recognition in order to nominate candidates for office. New party candidates must go on to win their party's nomination at convention. Critical distinctions undercut plaintiffs' comparison.

Plaintiffs also attack the March deadline, arguing that the constitutional infirmity is not the sufficiency of the time available for signature collection, but the date itself. DE 27 at 19–20. Plaintiffs contend that North Carolina has not offered a sufficient justification for moving up the deadline from May and that March is *per se* unconstitutional. *Id.* Again, plaintiffs' arguments fail. North Carolina is constitutionally empowered to regulate the times, places, and manner of elections and is not required to seek judicial pre-clearance before changing its filing deadlines.

In sum, the burdens here closely track those upheld in *Pisano*. Plaintiffs have not stated a claim upon which relief can be granted and, correspondingly, have not shown likely success on the merits.

*Petition Requirements for Unaffiliated Candidates—District Office*

Plaintiffs adopt by reference the same arguments as above—the signature requirement and March deadline—in their challenge for ballot access in the Seventh Congressional District. DE 15 at 15. For the same reasons as above, the Court rejects these arguments as they apply to Mr. Buscemi's candidacy for Congress. Plaintiffs have not stated a claim upon which relief can be granted and, therefore, have not shown likely success on the merits.

*Write-in Candidacy*

Plaintiffs also challenge North Carolina's law for write-in candidates requiring a petition accompanied by 500 and 250 signatures for statewide and district office, respectively. Plaintiffs

argue (1) there is no justification for each write-in candidate to separately satisfy the requirement, because once one write-in candidate qualifies, the ballot line for a write-in will be included on the ballot, and (2) the write-in requirements impede voters' rights to vote for whomever they choose. DE 15 at 16–17.

The Supreme Court has already upheld a complete prohibition on write-in candidates. *Burdick*, 504 U.S. at 436–40. Here, North Carolina's requirements to qualify as a write-in candidate are *de minimis* and provide an easy avenue for aspirants to qualify as candidates. The obvious justification for requiring each candidate to collect the small number of signatures is to treat all write-in candidates—who are similarly situated—equally. And while voters certainly have a right to have their votes counted, they only have a right to vote for actual, declared candidates for office. *See Burdick*, 504 U.S. at 437–38. Mr. Clark's asserted right to compel the state to count his "protest vote" has already been rejected by the Supreme Court and has no merit. *See Burdick* 504 U.S. at 438 (rejecting an argument that the state is required to count a "protest vote" for Donald Duck).

With respect to the laws governing write-in candidates, plaintiffs have not stated a claim upon which relief can be granted and have not shown likely success on the merits.

## CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted for any of their four counts. Defendant's motion to dismiss [DE 24] under Rule 12(b)(6) is GRANTED. Consequently, plaintiffs have not shown likely success on the merits, and their motion for preliminary and permanent injunction [DE 12] is DENIED. Plaintiffs' remaining motions [DE 29, 31, 34, 37] are DENIED AS MOOT. Plaintiffs' complaint is DISMISSED. The Clerk is DIRECTED to close the case.

SO ORDERED, this 22 day of November, 2019.

                                                                   _____
                                                                   TERRENCE W. BOYLE
                                                                   CHIEF UNITED STATES DISTRICT JUDGE